UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

```
UNITED STATES OF AMERICA,        )
      United States Attorney     )    Civil Action No.
      555 4th Street, N.W.        )    ECF
      Washington, DC 20530,       )
                                  )
              v.                  )
                                  )
4815 43RD ST. N.W.,               )
WASHINGTON, DC 20016,             )
                                  )
              Defendant.          )
_____)
```

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In the Unites States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully states as follows:

1.  This civil action in rem is brought to enforce 18 U.S.C. § 981(a)(1)(A), which provides for forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or 1957 (money laundering), or any property traceable to such property.

2.  This civil action in rem is brought to enforce 18 U.S.C. § 981(a)(1)(C) (incorporating by reference 18 U.S.C. § 1956(c)(7)), which provides for forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of:  (1) 18 U.S.C. § 1341 (Mail Fraud); (2) 18 U.S.C. § 1344 (Wire Fraud); or 18 U.S.C. § 664 (Theft or Embezzlement From Employee Benefit Plan).

3.  This Court has jurisdiction over this matter by virtue

of 28 U.S.C. §§ 1345 and 1355(a).  Venue is established by virtue of 28 U.S.C. §§ 1355(b) and 1395.

4.  The defendant property is more fully described as follows:

> 4815 43rd Street, N.W., Washington, DC, further described as lot number 14, in square numbered 1672, in a subdivision made by Nivan Incorporated, as per plat recorded in book 172, at page 155, in the office of the surveyor of the District of Columbia,

with all improvements, appurtenances and attachments thereon.

5.  Based on the facts set forth in this Complaint, there is reasonable cause to believe that BRITTIAN DAY ("DAY") did knowingly commit violations of 18 U.S.C. § 1341 (Mail Fraud), 18 U.S.C. § 1343 (Wire Fraud), and 18 U.S.C. § 664 (Theft or Embezzlement From Employee Benefit Plan), and that DAY owned the defendant property during the time when he committed these offenses and involved the defendant property in transactions prohibited by the Federal anti-money laundering statutes or used proceeds derived from, or traceable to, the fraud or embezzlement violations committed by DAY, listed above, and described in further detail below, to maintain or improve the defendant property.

<u>Background</u>

6.  DAY was an insurance agent who sometimes sold insurance and sometimes purported to sell insurance in Washington, D.C., and elsewhere.  DAY was the President of the A&D Insurance

-2-

Agency, Inc. ("A&D"), which maintained offices within DAY's
house, the defendant property, at 4815 43rd Street, N.W.,
Washington, D.C., 20016.

7.  Part of A&D's business consisted of selling specific
insurance products for employee benefit plans.  The following
employee benefit plans and their trustees were among A&D's
customers:  Bricklayers and Allied Craftsmen Local #1 of Maryland
Pension Fund; Bricklayers and Allied Craftsmen Local #1 of
Maryland Health and Welfare Fund; Bricklayers and Allied
Craftsmen Local #1 of Maryland Annuity Fund; Bricklayers and
Allied Craftsmen Local #1 of Maryland Vacation Fund; Bricklayers
Local #2 of Virginia Pension Fund; Bricklayers Local #2 of
Virginia Welfare Fund; Bricklayers Local #2 of Norfolk
Apprenticeship Fund; International Union of Painters and Allied
Trades District Council #51 Pension Fund; International Union of
Painters and Allied Trades District Council #51 Welfare Fund;
International Union of Painters and Allied Trades District
Council #51 Apprenticeship Plan; Ironworkers Local #5 Pension
Fund; Ironworkers Local #5 Health & Welfare Fund; Ironworkers
Local #5 Apprentice & Training Fund; Ironworkers Local #16
Annuity Fund; Ironworkers Local #16 Health & Welfare Fund;
Ironworkers Local #16 Pension Fund; Ironworkers Local #16
Vacation Fund; Marble, Tile & Terrazzo Workers Pension Fund;
Marble, Tile & Terrazzo Workers Health & Pension, Welfare Fund;

-3-

Marble, Tile & Terrazzo Workers Individual Account Fund; Brewery & Beverage Drivers Local #67 Pension Fund; Brewery & Beverage Drivers Local #67 Health & Welfare Fund; Shopmen Local #486 Retirement Fund/Criss Brothers, Inc.; Washington Area Carpenters' Pension Fund; Washington Area Carpenters' Health & Welfare Fund; Washington Area Carpet Layers Welfare Fund; Teamsters (Warehousemen) Local #730 Pension Fund; Teamsters (Warehousemen) Local #730 Health & Welfare Fund; Rodman Local #201 Vacation Fund; Rodman Local #201 Apprentice Fund; Rodman Local #201 Health Fund; and Rodman Local #201 Pension Fund.

8.   All of the employee benefit plans listed in the prior paragraph (referred to collectively herein as "the Plans") were subject to the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1001 et seq.). Each Plan was governed by a board of trustees and managed, on a day-to-day basis, by third party administrators.  The duties of the board of trustees included selecting insurance carriers and policies that were presented to them by DAY through the administrators and authorizing the purchase of the insurance policies that DAY recommended.  The duties of the administrators included providing information to DAY to use in purchasing insurance on the Plans' behalf and also on behalf of the trustees.  The administrators also paid the invoices sent by DAY for the Plans' insurance with the Plans' assets.

-4-

9. Part of A&D's business also included selling property and casualty insurance. Among A&D's customers for property and casualty insurance was Food & Friends, Inc. ("Food & Friends"). Food & Friends is a charitable organization headquartered in Washington, D.C., that provides meals and groceries to people living with life challenging illnesses, including HIV/AIDS, in the Washington, D.C. metropolitan area.

10. The Hartford was an insurance company headquartered in Hartford, Connecticut, that issued insurance policies that DAY purported to sell to Food & Friends, among other companies.

11. In July, 2002, Special Agents of the FBI met with the Deputy Regional Director, and the Senior Investigator of the Pension and Welfare Benefits Administration, U.S. Department of Labor ("DOL"), regarding DAY and A&D after a Senior Investigator with DOL was contacted by a law firm that represented 17 ERISA covered union plans. A lawyer for the firm advised investigators that clients had purchased fidelity and fiduciary insurance through DAY's agency, A&D, over the past 10 years. The attorney told investigators that since January 2000, DAY had been paid at least $400,000 for insurance. The attorney indicated that after a claim for $29,000 was submitted against one of the policies A&D sold, the insurance company told the "insured" that the policy was not valid. Based on this information, the attorney conducted a review of all policies purchased through DAY and learned that

-5-

all policies written by the A&D Insurance Agency were invalid.
In short, DAY, through his insurance agency, took money to pay
for insurance policies, but he did not actually purchase the
insurance coverage his customers thought they were paying him to
obtain for them.

DAY's Fraud/Embezzlement Scheme

    12.  Between March 1994 and continuing through in or about
November 2003, DAY defrauded employee benefit plans, their
trustees and a charity of approximately $1.5 million by
purporting to sell insurance polices that he never obtained.  As
part of his scheme, DAY provided false documentation and invoices
that indicated he was obtaining insurance for the business
insurance plans or trustees.  Based on the invoices DAY provided
to trustees, employers and employee organizations, DAY received
payment in the form of checks made payable to his company, A&D.
DAY caused these funds to be deposited into his A&D account at
the Bank of Northern Virginia.  The Bank of Northern Virginia was
later purchased by, and is now, BB&T Bank.  DAY electronically
wired, via facsimile, policy information to businesses he
defrauded in violation of 18 U.S.C. § 1343, and he used the mail
system and received payments via the mail, in violation of 18 U.S.C. § 1341.

    13.  During the course of DAY's fraud and embezzlement
scheme, and after DAY caused proceeds of his wire fraud, mail
fraud and embezzlement schemes to be deposited into A&D's bank

-6-

account, DAY wrote checks drawn on A&D's bank account to pay the mortgage on the defendant property, which DAY owned.  From about February 9, 1999 through about June 7, 2002, checks drawn on A&D's account and made payable to the defendant property's mortgage holder amounted to over $300,000.00, and included at least ten checks payable to the mortgage holder and drawn for in excess of $10,000.00.

14.  A District of Columbia Federal Grand Jury returned a Superseding Indictment charging DAY with the Federal offenses of Mail Fraud (18 U.S.C. § 1341), Wire Fraud (18 U.S.C. § 1343), and Theft or Embezzlement from an Employee Benefit Plan (18 U.S.C. § 664).  On about April 20, 2005, after a trial, a District of Columbia Petit Jury found DAY guilty of all crimes charged in the Superseding Indictment.

15.  From in or about March, 1994, and continuing through in or about August, 2004, DAY devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.  It was the purpose of the fraud scheme for DAY to enrich himself by stealing approximately $1.5 million that the Plans, the Plans' trustees or others on their behalf, and Food & Friends had given him to purchase insurance on their behalf. Instead of using this money to purchase insurance, DAY kept the money for his own use, and laundered the proceeds of his criminal

activity, while obtaining virtually none of the purchased insurance.  DAY then concealed and covered up both his fraudulent scheme and the actions taken in furtherance of his scheme.

Manner and Means of the Scheme

16.  It was a part of the scheme to defraud that DAY promised to purchase and to put in place various types of insurance on behalf of the Plans, their trustees, and Food & Friends.  It was a part of the scheme to defraud that DAY sent false invoices for insurance policies to the Plans, the trustees, and Food & Friends.  These invoices, which claimed to state the cost of purchasing the insurance policies described within each invoice, were false and fraudulent because DAY knew, with the exception of a few occasions, that none of the insurers referenced in the invoices had agreed to sell the referenced insurance.

17.  It was a part of the scheme to defraud that DAY induced the administrators to pay the invoices with checks drawn on bank accounts containing entirely Plan assets that they managed on behalf of the Plans.  These checks were payable to A&D and were intended to pay for the Plans' insurance.

18.  It was a part of the scheme to defraud that DAY caused the trustees and/or their employers or employee organizations to pay the invoices DAY mailed with checks they sent to DAY, made payable to A&D.

19.  It was a part of the scheme to defraud that DAY caused Food & Friends to pay the invoices with checks mailed and made payable to A&D.

20.  It was a part of the scheme to defraud that DAY deposited the Plans' checks and also the checks tendered by the trustees or their employers or employee organizations on the trustees' behalf, as well as the checks tendered by Food & Friends, into bank accounts that DAY controlled.

21.  It was a part of the scheme to defraud that DAY failed to purchase insurance on behalf of the Plans or their trustees and kept for himself approximately $1.5 million of the funds paid to A&D by the Plans and the trustees or their employers or employee organizations on their behalf.

22.  It was a part of the scheme to defraud that DAY purchased for Food & Friends significantly less insurance coverage than he had promised to purchase on its behalf in that DAY induced Food & Friends to entrust him with $311,323 to pay premiums on a three-year policy when no such policy existed and DAY used only $68,918.12 of these funds toward the purchase of a one-year insurance policy on Food & Friends' behalf.  In this manner, DAY converted to his own use and purposes approximately $250,000 of Food & Friends' money which he had deposited into A&D's bank account.

23.  It was a part of the scheme to defraud that DAY

concealed and covered up his theft of this money by mailing the
Plans and their trustees portions of fake and forged insurance
policies.

24.  It was a part of the scheme to defraud that DAY sought
to conceal the scheme and his ill-gotten gains by causing his
sister to open a bank account at BB&T Bank under the name of a
fictitious company called "Northern Cape Insurance Associates,
Inc."  Thereafter, DAY conducted both his personal financial
business and the financial business of A&D through this account
and, in so doing, concealed his interest in the account.

25.  It was a part of the scheme to defraud that DAY sought
to conceal his assets from the Plans by filing a false financial
affidavit in a lawsuit filed against him by the Plans.  This
affidavit, which significantly understated DAY's assets, was
intended to facilitate DAY's continued enjoyment of the fruits of
his fraud scheme and to prevent the recovery of his ill-gotten
gains.

26.  It was a part of the scheme to defraud that DAY covered
up his deception against Food & Friends by intercepting Food &
Friends' mail.  Specifically, DAY directed The Hartford to send
all correspondence concerning Food & Friends to Post Office Box
40042, Washington, D.C., 20016, which was rented in A&D's name,
and, in so doing, prevented The Hartford from communicating
truthful information about the extent of coverage and actual

premium cost to Food & Friends.

27.  Among the correspondence from The Hartford to Food & Friends that DAY intercepted from this post office box was check number 21034877, which was drawn on a bank account of The Hartford at First National Bank, Hartford, CT, and payable to "Tour de Friends, Inc.," a subsidiary of Food & Friends.  DAY, without authority or right, forged an endorsement on the check and deposited it into a bank account that he controlled.

28.  Also among the correspondence from The Hartford to Food & Friends that DAY intercepted was correspondence seeking payment from Food & Friends to prevent its insurance coverage from lapsing.  In response to this correspondence, DAY periodically wired The Hartford funds from a bank account that he controlled and, in so doing, concealed from Food & Friends the fact that he had not purchased the insurance that he promised to Food & Friends.

<u>Acts in Support of Mail Frauds</u>

29.  On or about the dates listed below, in the District of Columbia and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, DAY did knowingly cause to be delivered by mail according to the direction thereon and did cause to be placed in the mail the following checks, sent

-11-

from Maryland to the District of Columbia, and drawn on the
specified Plan accounts:

| Date | Plan Account | Check Number | Check Amount |
|------|-------------|--------------|--------------|
| 7/10/00 | Marble, Tile and Terrazzo Workers Individual Account Fund | 10042 | $4,113.67 |
| 8/14/00 | IBPAT District Council 51 Welfare Fund | 10085 | $10,084.00 |
| 9/14/00 | Bricklayers Local No. 2 of Virginia Welfare Fund | 10119 | $13,635.00 |
| 9/14/00 | Bricklayers Local 1 of Virginia Pension Fund | 10063 | $10,800.00 |
| 10/31/00 | Bricklayers & Allied Craftsmen Local No. 1 Vacation Fund | 10010 | $491.00 |

    30.  Additionally, on or about January 11, 2001, DAY did
knowingly place and cause to be placed in the mail from the
District of Columbia and delivered according to the direction
thereon an invoice from A&D Insurance Agency, Inc. to Rodman
Local 201 for trustee and fiduciary liability insurance, c/o Ms.
K.C. [initials], Zenith Administrators, XXXXX Little Patuxent
Parkway, Suite XXX, Columbia, MD 21044.  This invoice was false.

-12-

Acts in Support of Wire Frauds

31.  From in or about March, 1994, through in or about August, 2004, in the District of Columbia and elsewhere, DAY did devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises as is more fully described below.

32.  On or about the dates reflected below, for the purpose of executing the above-described scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, DAY did transmit and cause to be transmitted by means of wire, radio, and television communications from the District of Columbia to Maryland and Virginia the following writings:

| 12/27/99 | Fax and four page enclosure from DAY/A&D (202-XXX-X743) to J. C. [initials] (757-XXX-X096) of Norfolk Area Bricklayer Joint Apprenticeship & Training Committee concerning Fiduciary Insurance application; |
| --- | --- |
| 10/6/00 | Fax and four page enclosure from DAY/A&D (202-XXX-X743) to Gloria of Gem Group (410-XXX-X464) re:  policy application/invoice for Bricklayers & Allied Craftsmen Local #1 of MD, Pension, Health & Vacation (Baltimore); |
| 2/29/00 | Fax and one page enclosure from DAY/A&D (202-XXX-X743) to A. W. of Gem Group (301-XXX-X812) re:  termination of Criss Brothers Fiduciary Liability Policy; |

| 5/4/01 | Fax and two page enclosure from Gem Group (301-XXX-X812) to DAY/A&D (202-XXX-X743) re: Iron Workers Local 5 Trustee List; |
| --- | --- |
| 9/27/01 | Fax from Britt DAY/A&D (202-XXX-X743) to Linda of Associated Administrators (301-XXX-X340) re: renewal of fiduciary liability and fidelity crime policies, effective 10/1/01; |
| 11/16/01 | Fax from Britt DAY/A&D (202-XXX-X743) to A. W. (301-XXX-X812) re:  invoice for Criss Brothers. |

33.  Additionally, for the purpose of executing the above-described scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, DAY did transmit and cause to be transmitted by means of wire in interstate commerce the following sums from bank account number XXXXXX2634 held in the name of Northern Cape Insurance Associates, Inc., at BB&T Bank:  (1) on February 4, 2004 – $30,000.00; and (2) on March 5, 2004 – $15,000.00.

34.  Additionally, for the purpose of executing the above-described scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, DAY did transmit and cause to be transmitted by means of wire in interstate commerce the following sums from bank account number XXXXXX1182 held in the name of A&D at BB&T Bank:  (1) on June 18, 2004 – $6,412.68; and (2) on August 4, 2004 – $17,505.44.

-14-

Additional Acts Supporting Theft or
<u>Embezzlement From Pension and Welfare Funds Scheme</u>

35.   On or about the dates reflected below, DAY did embezzle, steal, and unlawfully and willfully abstract and convert to his own use and to the use of another the moneys, funds, securities, premiums, credits, property, and other assets of the employee welfare benefit plans and employee pension benefit plans reflected below.

| Date | Plan Name | Check Number | Check Amount |
|------|-----------|--------------|--------------|
| 7/10/00 | Marble, Tile and Terrazzo | 10042 | $4,113.67 |
| 8/14/00 | IBPAT District Council 51 Welfare Fund | 10085 | $10,084.00 |
| 9/14/00 | Bricklayers Local No. 2 of Virginia Welfare Fund | 10119 | $13,635.00 |
| 9/14/00 | Bricklayers Local 1 of Virginia Pension Fund | 10063 | $10,800.00 |
| 10/31/00 | Bricklayers & Allied Craftsmen Local No. 1 Vacation Fund | 10010 | $491.00 |

**<u>FORFEITURE</u>**

**<u>COUNT I</u>**

36.   Plaintiff incorporates by reference paragraphs 1 through 35 above.

-15-

37.  As described above, the defendant property was involved in transactions or attempted transactions in violation of 18 U.S.C. §§ 1956 or 1957 (money laundering), or is property traceable to such property.

38.  By reason of the above-described facts, the defendant property is subject to forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(A).

**COUNT II**

39.  Plaintiff incorporates by reference paragraphs 1 through 35 above.

40.  As described above, the defendant property constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1341.

41.  By reason of the above-described facts, the defendant property is subject to forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C).

**COUNT III**

42.  Plaintiff incorporates by reference paragraphs 1 through 35 above.

43.  As described above, the defendant property constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343.

44.  By reason of the above-described facts, the defendant property is subject to forfeiture to the United States pursuant

to the provisions of 18 U.S.C. § 981(a)(1)(C).

**COUNT IV**

45.  Plaintiff incorporates by reference paragraphs 1 through 35 above.

46.  As described above, the defendant property constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 664.

47.  By reason of the above-described facts, the defendant property is subject to forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C).

**WHEREFORE PLAINTIFF PRAYS:**

A.  That due process issue as to the aforementioned defendant property to enforce the forfeiture and give notice to the interested parties to appear and show cause why the forfeiture should not be decreed and the defendant property with appurtenances, and improvements be condemned as forfeited to the United States of America; and that thereafter the defendant property be disposed of in accordance with the law; and that the Court grant such other and further relief as the Court may deem just and proper;

B.  For any and all other relief provided by law or statute, including but not limited to, damages, penalties, attorneys fees,

the cost of litigation, and any such further relief this Court deems just and proper.

Respectfully submitted,


/s/
KENNETH L. WAINSTEIN
DC Bar No. 451058
United States Attorney


/s/
WILLIAM R. COWDEN
D.C. Bar #426301
JUDITH A. KIDWELL
Assistant United States Attorneys
555 4TH Street N.W.
Washington, DC 20530
(202) 514-7700
(202) 514-9155 (fax)

## **VERIFICATION**

I, Debra LaPrevotte, Special Agent, Federal Bureau of Investigation, declare under penalty of perjury as provided by Title 28, United States Code, Section 1746 that the foregoing Complaint for Forfeiture *In Rem* is based upon reports and information furnished to me or known by me and that everything contained therein is true and correct to the best of my knowledge and belief.

Executed on this _____ day of _____, 2006.


_____
Special Agent Debra LaPrevotte
Federal Bureau of Investigation

-19-